UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Patrick M. Meagher,

Plaintiff,

vs.

Terry P. Heggemeier,

Defendant.                    Civ. No. 06-3124 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Defendant's Motion to Substitute and Dismiss, and

upon the Plaintiff's cross-Motion to Remand.  At the time of the Hearing, the Plaintiff

Patrick M. Meagher ("Meagher") appeared by Ronald J. Riach, Esq., and the

Defendant Terry P. Heggemeier ("Heggemeier") appeared by Patricia R. Cangemi,

Assistant United States Attorney.  For reasons which follow, we recommend that

Meagher's Motion be denied, that Heggemeier's Motion to substitute the United States as the named Defendant be granted, and that the action be dismissed, with prejudice.

## II.   Factual and Procedural Background

This action arises out of a lawsuit for defamation, and intentional infliction of emotional distress, which was filed by Meagher, who is a retired Colonel, against Heggemeier, who is a Brigadier General, with both being members, at all relevant times, in the Minnesota Air National Guard.  In his Complaint, see, Docket No. 1-1, Meagher alleges that, in July of 2004, he was an applicant for the position of Commander of the Minnesota Air National Guard, and that Heggemeier defamed him, during a meeting of the Board of Officers ("Board"), which consisted of Heggemeier, Major General Larry W. Shellito ("Shellito"), and Brigadier General (Rtd.) Mark R. Ness ("Ness").  See, Declaration of Ness, Docket No. 37, at p. 1.  According to Meagher, Heggemeier made statements to Meagher's military supervisors, at the time of the Board's proceedings, suggesting that Meagher had inappropriate contacts with a subordinate female officer, and was "mentally unstable."

Heggemeier removed this case to Federal Court, and subsequently, filed a Motion to Substitute and Dismiss, see, Docket No. 27, in which he asserts that the United States of America ("United States") should be substituted as the only proper

Defendant, and that the entire action should be dismissed, with prejudice, based upon the Feres doctrine of intra-military immunity.  See, Feres v. United States, 340 U.S. 135 (1950).  Meagher has filed a cross-Motion to Remand to State Court, and argues that this Court lacks jurisdiction since, at all relevant times, Heggemeier was acting as a State employee.  See, Docket No. 35.

III.  Discussion

A.    Heggemeier's Motion to Substitute the United States as the Defendant.

"Heggemeier is an employee of the United States of America," see Notice of Removal, Docket No. 1-1, at p. 1, and the United States Attorney, for the District of Minnesota, has certified that Heggemeier "was acting within the scope of his employment as an employee of the National Guard pursuant to 32 U.S.C. §505 at the time of the alleged conduct in the complaint."  See, Certification, Docket No. 1-5.  Since Meagher's Complaint alleges tortious acts against Heggemeier, we review the pending Motion to Substitute, and to Dismiss, under the standard applicable to actions under the Federal Tort Claims Act, Title 28 U.S.C. §§2671, et seq. ("FTCA").

1.    Standard of Review.  The FTCA  is a limited waiver of sovereign immunity that authorizes private tort actions against the United States, "under

- 3 -

circumstances where the United States, if a private person, would be liable to the complainant in accordance with the law of the place where the act or omission occurred." United States v. Olson, 546 U.S. 43, 43 (2005), citing Title 28 U.S.C. §1346(b)(1); Sosa v. Alvarez-Machain, 542 U.S. 692, 699 (2004)("The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, and with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances.'"), citing, and quoting, Richards v. United States, 369 U.S. 1, 6 (1962), and Title 28 U.S.C. §2674; Barnes v. United States, 448 F.3d 1065, 1066 (8th Cir. 2006); Benter v. United States, 2006 WL 3759756 at *1 (D. Minn., December 1, 2006), aff'd sub nom. Benter v. Iowa Dept. of Transportation, 2007 WL 1040350 at *1 (8th Cir., April 9, 2007).

Under the FTCA, the Federal Government may be sued for the negligent or wrongful acts of "any employee of the government while acting within the scope of his office or employment" under circumstances in which the United States would be liable were it a private employer. See, Title 28 U.S.C. §§1346(b), and 2674; St. John v. United States, 240 F.3d 671, 676 (8th Cir. 2000); see also, Primeaux v. United States, 181 F.3d 876, 880 n. 4 (8th Cir. 1999), cert. denied, 528 U.S. 1154 (2000); Anthony v. Runyon, 76 F.3d 210, 212-13 (8th Cir. 1996).

Title 28 U.S.C. §2679(d)(1) provides that, if an action is commenced against an individual employee of a Federal agency, rather than against the United States, the Attorney General is charged with making the initial determination of whether that employee was acting within the scope of his employment, see, <u>Heuton v. Anderson</u>, 75 F.3d 357, 359-60 (8th Cir. 1996), and the United States may be substituted for the named defendant, based upon a scope of employment certification by the Attorney General.  See, <u>Osborne v. Haley</u>, --- U.S. ---, 127 S.Ct. 881, 894 (2007); <u>Smith v. Wintersteen</u>, 97 Fed.Appx. 69, 69 (8th Cir. 2004); <u>Larsen v. Frederiksen</u>, 277 F.3d 1040, 1041 (8th Cir. 2002); <u>Lawson v. United States</u>, 103 F.3d 59, 60 (8th Cir. 1996).

The certification by the Attorney General, that the employee was acting within the scope of his employment, "does not conclusively establish as correct the substitution of the United States as defendant in place of the employee," see, <u>McAdams v. Reno</u>, 64 F.3d 1137, 1145 (8th Cir. 1995), as our Court of Appeals requires "at least limited judicial review of the * * * scope of employment before substituting the United States as a defendant."  See, <u>Forrest City Mach. Works, Inc. v. United States</u>, 953 F.2d 1086, 1088 (8th Cir. 1992); see also, <u>McAdams v. Reno</u>, supra, citing <u>Gutierrez de Martinez v. Lamagno</u>, 515 U.S. 417, 436 (1995), and <u>Brown v. Armstrong</u>, 949 F.2d 1007, 1011 (8th Cir. 1991).  Thus, certification is prima facie

evidence that the challenged conduct was within the scope of employment, and a plaintiff must come forward with specific facts to rebut the certification, and to establish that the employee was not acting within the scope of his Federal employment. See, McAdams v. Reno, supra at 1145; Anthony v. Runyon, supra at 214-15; Heuton v. Anderson, supra at 360; Lawson v. United States, supra at 60.

Title 28 U.S.C. §2671 provides that, for FTCA purposes, members of the National Guard are "employee[s] of the government" when they are engaged in "training or duty," as defined under Title 32 U.S.C. §505. See, Title 28 U.S.C. §2671; Murray ex rel. Murray v. United States, supra at 1009; Walsh v. United States, 31 F.3d 696, 699 (8th Cir. 1994). For a member of the National Guard to act "within the scope of his office or employment" under Section 2671, the evidence must establish that he was acting "in the line of duty" -- a finding that is governed by the applicable State law of respondeat superior. See, St. John v. United States, 240 F.3d 671, 676 (8th Cir. 2001); Primeaux v. United States, supra at 882 n. 1 [listing cases]; Walsh v. United States, supra at 699; Forrest City Mach. Works, Inc. v. United States, supra at 1088 n.5.

Under Minnesota law, in cases asserting an intentional tort, an employee acts within the scope of his employment when "he is performing services for which he has

been employed or while he is doing anything which is reasonably incidental to this employment." McAdams v. Reno, supra at 1145, quoting Marston v. Minneapolis Clinic of Psychiatry and Neurology, 329 N.W.2d 306, 312 (Minn. 1982). Therefore, in order to find that an intentional tort was within the scope of employment, the tort must have taken place within the work-related limits of time and place, and must have been related to the employee's duties. See, Hagen v. Burmeister & Assoc., 633 N.W.2d 497, 504 (Minn. 2001), citing Lange v. Nat'l Biscuit Co., 211 N.W.2d 783, 786 (Minn. 1973).

In weighing the second prong, Courts consider the foreseeability of the employee's actions, with actions being deemed foreseeable when, "in the context of a particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." Fahrendorff ex rel. Fahrendorff v. N. Homes, Inc., 597 N.W.2d 905, 912 (Minn. 1999). In weighing foreseeability, Minnesota Courts will determine if the alleged intentional tort was a "well-known hazard" of the industry. Id. at 911; Marston v. Minneapolis Clinic of Psychiatry & Neurology, Ltd., supra at 311. An Evidentiary Hearing, so as to determine if an employee was acting within the scope of his or her employment, is only necessary if there are material facts in dispute. See,

McAdams v. Reno, supra at 1145, citing Brown v. Armstrong, 949 F.2d 1007, 1012 (8th Cir. 1991).

        2.    Legal Analysis.  The Attorney General has certified that Heggemeier was a member of the National Guard, who was acting within the scope of his Federal employment pursuant to Title 32 U.S.C. §505, at the time of acts that are alleged in the Complaint.[1]  See, Certification, supra; see also, Declaration of Heggemeier, Docket No. 31, Exhibit 2.  To challenge that prima facie showing, Meagher argues that Section 505 does not confer Federal employee status, under the circumstances presented here and, alternatively, he claims that, even if Heggemeier had been acting under orders as a Federal employee, Heggemeier was outside the scope of that employment when he raised his concerns about Meagher to the Board.

---

[1]"The National Guard is a dual federal and state program," and a person who desires to be enrolled in the Federal program must first enroll in his State National Guard, and subsequently, be recognized by the Federal National Guard.  See, Perpich v. United States Dept. of Defense, 880 F.2d 11, 14-16 (8th Cir. 1989)(explaining relationship between State and Federal National Guard programs); see also, Title 32 U.S.C. §101(4)(providing dual State-Federal status for members of the National Guard); Title 32 U.S.C. §301 (detailing Federal recognition of enlisted members). The parties apparently concede that Heggemeier was a member of both the State and Federal National Guards.

Meagher begins by asserting that "[a]ctivities performed in a Title 32 status are activities of the state National Guard," and argues that, since Heggemeier was acting under orders that were issued pursuant to Title 32 U.S.C. §505, he was acting as  a State, rather than a Federal, employee.[2]  This argument is unavailing, however, as it

---

[2]Meagher has offered Declarations, which focus on the distinctions between the Federal, and the State, components of the Air National Guard, but these either wholly miss the point, or are entirely conclusory.  For example, Meagher has proffered the Declaration of Robert I. Gruber ("Gruber"), who served as the Air National Guard Assistant to the Judge Advocate General of the United States Air Force, and who opines that "Heggemeier was a state, not a federal, employee during the commission of this alleged act."  Docket No. 42, at p. 2 ¶5.  Unfortunately, Gruber does not cite, let alone address either the provisions of Title 28 U.S.C. §2671, or Title 32 U.S.C. §505, which are critical to the legal analysis that we are obligated to undertake.  Indeed, no one appears to dispute the central corollaries, that the State and Federal components of the Air National Guard are separate, but interrelated, or that the Uniform Code of Military Justice -- the Federal military's criminal code -- is inapplicable to Air National Guard members who serve under State governance.  The unavoidable fact, however, is that those core precepts to Gruber's attestations are wholly irrelevant to the questions presented here.

Similarly, Ness has averred as follows:

> Terry Heggemeier and myself served on the Board pursuant to Title 32 of the United States Code, Section 505.  This is state active duty and we were state employees at the time of the Board service, not federal employees.  We were not on federal active duty.  Paragraph 1. of the Order authorizing Defendant's service on that Board states: "TYPE OF DUTY: Local Special Training (State)".

Docket No. 37, at pp. 1-2 ¶3.

- 9 -

overlooks the explicit language of the FTCA, which specifically provides that members of the National Guard are "employee[s] of the [Federal] government" when they are engaged in "training or duty," as defined under Title 32 U.S.C. §502.  See, Title 28 U.S.C. §2671.  Next, Meagher suggests that, in this context, "training or duty" is meant to encompass solely military duty, and does not allow for members of the National Guard to attend officer selection Board meetings.  We disagree for several reasons.

First, Meagher again overlooks the specific language of the FTCA.  Section 505 establishes the authority of the Secretaries of the Army, and Air Force, to order National Guardsmen to attend service school, or to report "for routine practical instruction at an air base during field training or other outdoor exercise."  See, Title 32 U.S.C. §505.  However, as Meagher elsewhere concedes, for the purposes of the FTCA, members of the National Guard "engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of Title 32" are treated as Federal employees.  See, Plaintiff's Reply Memorandum, Docket No. 50, at p. 7 ("Notwithstanding the previous

_____

Absent from Ness' Declaration, however, is any foundation for the conclusions he renders, nor does he attest to any past practice of employing some other provision than Title 32 U.S.C. §505, for appointments to such Boards, or to any past determination that such an appointment is ineffectual under the FTCA.

discussion, for purpose [sic] of the FTCA only, members of the national Guard 'engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of Title 32' are treated as employees of the government."), citing <u>Title 28 U.S.C. §2671</u>. Moreover, Minnesota Statutes Section 3.732 provides that, for purposes of tort litigation, "employee of the state" does not include members of the Minnesota National Guard while they are engaged in training or duty under Title 32 U.S.C. §505.  See, <u>Minnesota Statutes Section 3.732, Subdivision 1(2)</u>.

In addition, neither of the decisions, which have been cited by Meagher in support of his claim, that Section 505 does not provide Federal employee status under the FTCA, actually addresses that Statute in the context of the FTCA.  See, <u>Brown v. Alaska</u>, 953 P.2d 888, 899 (Alaska 1998)(holding that a full-time member of the State National Guard, who had not been called into active Federal service, was a State employee); <u>Karr v. Castle</u>, 768 F. Supp. 1087, 1099 (D. Del. 1991), aff'd <u>sub nom. United States v. Carpenter</u>, 22 F.3d 303 (3d Cir. 1994)[unpublished decision] (affirming discharge of member of State National for dereliction of duty, who was not under orders implicating Federal Guard status).

Meagher cites the unpublished decision in <u>Roach v. United States Air Force</u>, 1993 WL 370627 at *1 (E.D. La., September 13, 1993), and claims that it stands for

the proposition that we must "look past the form of the order [putting Heggemeier into Section 505 status] and instead look to the substance of the actual activity" that Heggemeier was charged with performing.   See, <u>Plaintiff's Reply Memorandum</u>, <u>Docket No. 50</u>, at p. 5.  In <u>Roach</u>, the plaintiff filed a Complaint against several National Guardsmen and, in determining whether the FTCA applied, the Court considered whether the soldiers were engaged in training or duty under any of the applicable Sections of Title 32.  See, <u>Roach v. United States Air Force</u>, supra at *2. Meagher relies on this decision, which is not precedential, to support his claim that we are vested with the discretion to weigh for ourselves the validity of the orders under which Heggemeier was acting, when he made his allegedly defaming statements to the Board.

However, we find that the Court, in <u>Roach</u>, was compelled to consider each of the Sections under Title 32, as there was no showing, by any party, as to the nature of the defendant soldier's orders.  In contrast, on the Record before us, we have the Attorney General's Certification, as well as the attestations of Heggemeier's commanding officers, together with a copy of the actual Order under which Heggemeier acted, that demonstrate that he was serving under orders issued pursuant to Section 505.  Despite our search, we have found no authority to support the

- 12 -

Plaintiff's contention, that we are vested with the discretion to discredit the Certification based upon a claimant's belief, that serving on an officer selection Board does not constitute training or duty under the FTCA, nor has Meagher drawn any to our attention. We can accept that, if some competent showing were made that service on such a Board was not within the purview of Section 505, we would have a basis to consider the issue further, but no such evidence is offered to collaterally attack to effectiveness of Heggemeier's appointment under Section 505. Here, the burden remains on Meagher to rebut the presumption of Federal employee status which arises from the Certification of the Attorney General, and Meagher has plainly failed to sustain that burden.

Meagher further argues that, even if we find that Heggemeier had Federal employee status, at the time of the incident alleged in the Complaint, we should not apply the FTCA, as Heggemeier's statements to Ness, and to the Board, were made outside of the scope of his assigned duties. In considering, under Minnesota law, the first prong of the test for determining the scope of employment, we note that Heggemeier's statements to Ness, and to the Board, were made during the time and place of employment, since Ness was on the same Board, and the statements were made just prior to the Board meeting, and occurred, as did the statements to the

Board, in the Headquarters of the Minnesota National Guard.  See, <u>Declaration of Ness</u>, <u>Docket No. 37</u>, at p. 2 ¶4; <u>Declaration of Shellito</u>, <u>Docket No. 32</u>, at p. 1, ¶3. Notably, Meagher does not dispute that Heggemeier made the statements privately, whether to Ness or the Board; they were not made publicly, nor is there any assertion that Heggemeier made the statements to anyone other than Board members.

Rather, the parties' dispute focuses on the second prong of the test -- whether Heggemeier's actions were foreseeable.  Both parties have submitted evidence, in the form of Declarations and Affidavits, regarding the foreseeability of Heggemeier's statements.  In support of Heggemeier's position, that his statements to the Board were made within the scope of his employment, he has submitted his own Declaration, see, <u>Docket No. 31</u>, and the Declarations of Shellito, see, <u>Docket Nos. 32, 47</u>, and William F. Kolbinger ("Kolbinger"), who serves as the Human Resources Officer for the Minnesota National Guard, and who advises the highest military officer in Minnesota "regarding the selection, hiring, discipline and removal of military and civilian personnel in the Minnesota National Guard.").  See, <u>Docket No. 48</u>, at p. 1 ¶2.

Shellito, who was, at all times relevant to this action, the senior military officer of the Minnesota National Guard, and Heggemeier's supervising officer, has averred that Heggemeier's duties on the Board included "providing candid information on the

qualifications of the persons being considered for a position of high responsibility, vital to the Minnesota Air National Guard's successful performance of its mission as a Reserve of the United States Air Force," and additionally, "provid[ing] information that [might] reflect negatively on an individual's suitability to hold such a position." See, Docket No. 32, at p. 2.  Shellito has also attested that members of Senior Officer Boards, including Heggemeier, take an oath that requires that they will keep the fitness of individuals in mind while performing their duties of selecting officers for special service which, Shellito opined, was consistent with Heggemeier's disclosure of information about Meagher to the members of the Board.  See, Docket No. 47, at p. 2.

Likewise, Kolbinger attested that he is "familiar with the Officer Consideration Board process generally and [that he is] familiar with the specific Board that was held on July 21, 2004 held [sic] for the purpose of selecting a new Chief of Staff for the Minnesota Air National Guard and for which Col Patrick Meagher was one of the officers being considered."  See, Docket No. 48, at p. 1 ¶3.  Kolbinger continues by averring as follows:

> Board members are tasked with providing input to the
> Adjutant General of Minnesota as the selecting official to
> facilitate selection of the best candidates for appointment to

> senior officer positions.   They are expected to provide
> information regarding the qualifications of officers being
> considered.  This includes providing information that would
> reflect adversely on the applicants.

Id. at p. 2 ¶4.

*     *     *

> If a board member does not provide adverse information
> about an applicant, it would be considered a failure to
> satisfy that board member's responsibilities and could
> adversely affect the Adjutant General's military decision
> making process.

Id., at ¶6.

Consistent with these attestations, Heggemeier has sworn that his intent in serving on

the Board "was to ensure the Adjutant General had the information necessary to ensure

appointment of the best possible Chief of Staff candidate, for the benefit of the Air

Force and the Minnesota Air National Guard," and that any statements he made to the

Board regarding Meagher "were made in good faith performance of my duty to

provide candid information about persons being considered as potential candidates

for the Chief of Staff position."   Declaration of Heggemeier, Docket No. 31, at p. 2

¶8.

For his part, Meagher has also submitted several Affidavits, in addition to his

own, to support his contention that Heggemeier was not acting within the scope of his

- 16 -

Federal employment at the time that the contested statements were made.   For example, Terrance Tripp  ("Tripp"), who was Meagher's commanding officer, attested that he was "aware of the comments" made by Heggemeier concerning Meagher, even though he was not a member of the Board, and found that the comments were "highly unusual, unforeseeable, and not one of the hazards that an applicant to such a Board would expect."  Affidavit of Tripp, Docket No. 40, at p. 2.

Similarly, Eugene R.  Andreotti ("Andreotti"), who was the Adjutant General of the Minnesota National Guard at the time that the Board convened, testified that he had served on numerous Boards throughout his career, and that he believed that Heggemeier's statements were not foreseeable, and were "clearly defamatory." Affidavit of Andreotti, Docket No. 38. Although we have no reason to doubt the sincerity of those Affiants, we note that they had no relationship to the Board, and that the opinions expressed are highly conclusory -- as to what is "forseeable," or "defamatory" -- and they provide no substantiation, with pertinent facts, or military policy and procedures, for the assertion that Heggemeier's statements were not foreseeable.[3]

_____

[3]Although several of the averments to characterize Heggemeier's motivation as one of malice toward Meagher, "under Minnesota law an employee's motivation is

In addition, Meagher has submitted the Declaration of Ness, who served as the Commander of the Minnesota National Guard, and who, as we have noted, was a member of the Board, along with Shellito and Heggemeier.  See, <u>Declaration of Ness</u>, supra at p. 1.  Ness attests that he believed that Heggemeier's statements were not foreseeable, and therefore, not within the scope of his Federal employment, as the statements were made without any underlying factual substantiation.  However, Ness does not cite to any policy, as promulgated by the Board, or the National Guard, that requires the submission of admissible evidence to the Board concerning the fitness of an officer candidate.  In the absence of any such showing, we decline to impose procedural rules on a purely military personnel decision, on the <u>ad</u> <u>hoc</u> assessment of Ness.

Indeed, precedent suggests that Heggemeier's comments would appear to fall within the scope of employment.  In <u>McAdams v. Reno</u>, supra at 1145, our Court of Appeals applied Minnesota law, and determined that two FBI investigators were acting

_____

only relevant to negligence claims, not to intentional torts."  <u>McAdams v. Reno</u>, 64 F.3d 1137, 1145 n.7 (8th Cir. 1995).  Of course, such evidence could also rebut any invocation, by Heggemeier, of qualified privilege, see, e.g., <u>Stuempges v. Parke, Davis & Co.</u>, 297 N.W.2d 252, 257 (Minn. 1980), but Heggemeier has not predicated his Motions on such a privilege, and therefore, we place no weight on any surmise as to Heggemeier's motivation in making any disclosures to the Board.

- 18 -

within the scope of their Federal employment when they made allegedly defamatory comments about a plaintiff they were investigating.  In that case, the defendants' jobs required them to investigate allegations of inappropriate conduct, and all of the contested comments were made at the workplace, except for one, which took place between one of the defendants, and a fellow agent, at the latter's civilian workplace. Id.  The Court found it significant that the record contained no evidence that any of the allegedly defamatory conversations were unrelated to the defendant agents' investigation.  Id.; see also, Manion v. Jewel Tea Co., 160 N.W. 767 (Minn. 1916)(finding employee's defaming statements made in the scope of employment when spoken for purpose of attempting to preserve employer's business relations). By way of contrast, in Bishop v. Tice, 622 F.2d 349, 359 (8th Cir. 1980), on which Meagher relies, our Court of Appeals found that Federal employees were not entitled to immunity where the defendant supervisors "did not simply misuse their authority" by wrongfully discharging the plaintiff employee, but went well beyond their authority by threatening the plaintiff with criminal charges instead of attempting to dismiss him for cause.  We simply find Bishop to be inapposite to the circumstances here.

Here, the nature of Heggemeier's appointment was to specifically advise the Board members of his impressions, whether positive or negative, concerning the

suitability of various candidates for a promotion.  See, <u>First Declaration of Shellito</u>, supra at pp. 1-2.  The Record does not disclose any applicable policy which required those impressions to be substantiated, either by admissible evidence, or by a preponderance of the proof.  Although the Affidavits submitted by Meagher contain expressions of shock, and dismay, as to the statements attributed to Heggemeier, we find nothing in those averments which would so much as intimate that an applicable standard winnows the participants' impressions, so that only those passing a threshold of substantive support, are allowable.  Indeed, given the uncontroverted averments of Shellito, and Kolbinger, that an appointee to the Board would be in derogation of his or her duty, not to present such evidence to the Board, it is not surprising, let alone legally unforeseeable, that Heggemeier, as a participant, followed that direction.

On this Record, no reasonable Jury could find, on the competent evidence of Record, that Heggemeier was outside the course and scope of his employment, when he made the statements, that Meagher attributes to him, before, and during, the Board proceedings.  Although Heggemeier's comments may have appeared "shocking" to at least one member of the Board, foreseeability does not hinge on whether the assertedly defamatory comment had salacious connotations, or was otherwise disparaging.  If Board members could only present favorable comments, or

assessments which were undoubtedly correct in every detail, then we doubt that many would choose to participate on the Board for fear of the type of litigation that Heggemeier now faces.   If, as Meagher's Declarations appear to suggest, Heggemeier's comments were so far outside the norm for such Boards, then we would have thought that the Minnesota Air National Guard would have disciplined him, removed him from the Board, or given the comments no weight.   No such adverse actions are reflected in this Record.

Simply, and plainly, Heggemeier's employer, as well as his commanding officer, have embraced Heggemeier's conduct, as a participant on the Board, as within the scope and course of his employment by the Federal Government, and Meagher has failed to demonstrate, by competent evidence, that the embrace should be rejected.

Since we find, as a matter of law, that Heggemeier's comments were foreseeable, and that he was acting within the scope of his employment as a Federal employee during the relevant time period, we recommend that  the United States be substituted as the named Defendant, and that Heggemeier be dismissed from this action.

2.    <u>The Defamation Exemption under the FTCA</u>.   As Meagher concedes, the waiver of sovereign immunity, under the FTCA, does not apply to

certain causes of action, including defamation claims.  See, <u>Plaintiff's Memorandum</u>, <u>Docket No. 36</u>, at p. 16 ("Pursuant to 28 U.S.C. §2680(h), the FTCA exempts certain claims from this waiver," and "[a]mong those claims are defamation claims (specifically, libel and slander claims).").  According to the law of this District, and Circuit, "[a] defamation claim must be dismissed because the FTCA does not waive sovereign immunity for such claims."  <u>Day v. Dept. of Veterans Affairs</u>, 2006 WL 2670151 at *7 (D. Minn., September 18, 2006), quoting <u>McAdams v. Reno</u>, supra at 1144.  Therefore, the Government now being substituted for Heggemeier, Meagher's defamation claim necessarily fails, and we proceed to his intentional infliction of emotional distress claim.

   3.   <u>Meagher's Failure to Exhaust His Administrative Remedies</u>.  Next, the Government argues that Meagher's claims should be dismissed, with prejudice, because he failed to file an administrative claim for his alleged injury before filing the present lawsuit, and the time to now file such a claim has expired.

   a.   <u>Standard of Review</u>.  To bring a claim under the FTCA, a party must fully comply with all of the conditions and requirements prescribed by the Act.  See, <u>Bellecourt v. United States</u>, 994 F.2d 427, 430 (8th Cir. 1993), cert. denied,

510 U.S. 1109 (1994).  One of the primary requirements of the FTCA is found in the

first sentence of Title 28 U.S.C. §2675(a), which states as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

Title 28 U.S.C. §2675(a).

As the statutory language makes clear, a party cannot bring a lawsuit under the FTCA,

without first exhausting his or her administrative remedies by presenting a written claim

for relief to "the appropriate Federal agency."  See, Duncan v. Department of Labor,

313 F.3d 445, 447 (8th Cir. 2002)("Although the Federal Tort Claims Act creates

several exceptions to the United States' sovereign immunity, it requires the claimant

to first 'present[] the claim to the appropriate Federal agency.'"), quoting Title U.S.C.

§2675(a); see also, McCoy v. United States, 264 F.3d 792, 794 (8th Cir. 2001)("An

action may not be commenced in federal court under the FTCA unless the plaintiff has

first presented his claim to the appropriate federal agency, and that claim has been

denied."), cert. denied, 535 U.S. 1053 (2002).

In addition, an FTCA claimant must file his or her administrative claim within two (2) years after the claim accrued.  See, <u>McCoy v. United States</u>, supra at 794 ("'[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues.'"), quoting <u>Title 28 U.S.C. §2401(b)</u>; see also, <u>Garza v. United States Bureau of Prisons</u>, 284 F.3d 930, 934 (8th Cir. 2002)("Under the FTCA, a tort claim against the United States must be presented in writing to the appropriate federal agency within two years after the claim accrues or it is time barred.").  Furthermore, "[a] plaintiff's compliance with the two-year limitations period is a jurisdictional prerequisite, since FTCA acts as a waiver of the federal government's sovereign immunity."  <u>McCoy v. United States</u>, supra at 794.   Therefore, if an FTCA claimant does not file an administrative claim for relief within two (2) years after the claim accrues, any subsequent FTCA lawsuit, which is based on that claim, must be dismissed for lack of subject matter jurisdiction.

    b. <u>Legal Analysis</u>.  Meagher admits that he did not file an administrative claim prior to filing this lawsuit, but argues that such a claim was not necessary, as he believed that Heggemeier was acting in his capacity as a State, rather than a Federal employee, at the time of the alleged defamatory comments.  See,

Plaintiff's Memorandum in Support, supra at pp. 17-18.   However, our Court of Appeals has found that ignorance as to whether a defendant was acting in the scope of Federal employment does not toll the statute of limitations for FTCA actions.   See, T.L. ex rel. Ingram v. United States, 443 F.3d 956, 964 (8th Cir. 2006); Motley v. United States, 295 F.3d 820, 824 (8th Cir. 2002); Wollman v. Gross, 637 F.2d 544, 548-49 (8th Cir. 1980).   The events alleged in Meagher's Complaint occurred on July 21, 2004.   See, Complaint, supra at 3.   Thus, the statute of limitations on the Plaintiff's claims expired two (2) years later, on July 21, 2006.   As Meagher concedes that he has not filed an administrative claim concerning the allegations in his Complaint, and since the evidence of Record substantiates that concession, see, Declaration of I.E. Glenn Parr Docket No. 30, we find that the statute of limitations has run on Meagher's claims, and they should be dismissed with prejudice.

The Plaintiff, citing Watson v. Arkansas National Guard, supra at 1008, claims that we have the discretion to dismiss this action without prejudice.   There, our Court of Appeals considered a National Guardman's claims, and dismissed them without prejudice as premature, when he had failed to exhaust his administrative remedies. Although the Court, in Watson, did not explicitly explain its rationale in dismissing the plaintiff's claim without prejudice, it appears that, there, the two (2) year statute of

limitation for filing an administrative claim had not yet expired.  In contrast, here, as admitted by the Plaintiff, the statute of limitation has expired, leaving him with no further administrative remedies to exhaust.  As a consequence, since we have found that the United States should be substituted as the Defendant, we recommend that this action be dismissed with prejudice.[4]

4.    The Applicability of the Feres Doctrine.  Lastly, the Government argues that, if the Court finds that Heggemeier was a Federal employee who was acting within the scope of his employment, and substitutes the United States as the Defendant, the Plaintiff's claims against the United States should be dismissed, under the Feres doctrine, for lack of subject matter jurisdiction.

a.    Standard of Review. The Feres doctrine holds that the FTCA does not waive the government's sovereign immunity as to actions brought by military personnel which arise out of, or in the course of, activities incident to military

_____

[4]We note that, in the recent decision of Osborne v. Haley, --- U.S. ---, 127 S.Ct. 881, 894-95 (2007), the Supreme Court held that, once the Attorney General certifies that a Federal employee is acting within the scope of employment, "exclusive competence to adjudicate the case resides in the federal court, and that court may not remand the suit to the state court," even if the certification by the Attorney General was in error.  Therefore, although we deny the Plaintiff's Motion to Remand, Docket No. 35, as moot, we would be compelled to deny his Motion on jurisdictional grounds, even if the Motion were not moot.

service.   See, <u>Feres v. United States</u>, supra at 146.   Sovereign immunity is a jurisdictional doctrine, and the <u>Feres</u> doctrine is likewise jurisdictional.   See, <u>Brown v. United States</u>, 151 F.3d 800, 803-4 (8th Cir. 1998).   The <u>Feres</u> decision was based on the rationale that the relationship between the Government, and a member of the armed forces, was "distinctly federal in character," and service-related injuries were already redressed by a no-fault military compensation system, and was informed by the additional concern that allowing civilian Courts to intervene in service-related lawsuits could produce a negative effect upon military discipline.   See, <u>Brown v. United States</u>, supra at 804, citing, and quoting, <u>Stencel Aero Eng'g Corp. v. United States</u>, 431 U.S. 666, 671-72 (1977), and <u>United States v. Johnson</u>, 481 U.S. 681, 688-91 (1987).

In determining the applicability of the <u>Feres</u> doctrine, we ask whether there is a relevant relationship between the service member's activity, and his or her military service, and additionally, whether military discipline will be impeded if the challenged conduct is litigated in a civil action.   See, <u>Brown v. United States</u>, 739 F.2d 362, 367 (8th Cir. 1984), cert. denied, 473 U.S. 904 (1985).   An injury is considered "incident to service" if it arises "because of [a plaintiff's] military relationship with the Government."   See, <u>Brown v. United States</u>, supra, 151 F.3d at 803, citing <u>United</u>

- 27 -

States v. Johnson, supra at 689.   The Feres doctrine has been extended to apply to actions involving members of the National Guard.   See, Stencel Aero Engineering Corp. v. United States, supra at 666; see also, Wood v. United States, 968 F.2d 738, 739 (8th Cir. 1992); Watson v. Arkansas National Guard, 886 F.2d 1004, 1007 (8th Cir. 1989).

    b. Legal Analysis.   Meagher seeks recovery for statements that Heggemeier allegedly made in the course of an internal, military, personnel action -- specifically a meeting of the Board charged with selecting a candidate to fill a senior military position.   Feres bars claims that are related to personnel actions taken by the National Guard, even when tortious conduct is alleged.   In Watson v. Arkansas National Guard, supra, our Court of Appeals upheld the decision of the District Court to grant Summary Judgment against a member of the National Guard, based upon the Feres doctrine, when his claim was that his superiors had made a negative employment decision for discriminatory reasons.   Similarly, in Wood v. United States, supra at 739-40, the Court found that "the nature of the pleaded claim, judicial review of a discrete intraservice personnel decision which * * * involves * * * an assessment of an individual's military qualifications" was non-justiciable.   See also, Hupp v. U.S.

Dept. of the Army, 144 F.3d 1144, 1148 (8th Cir. 1998); Uhl v. Swanstrom, 79 F.3d 751, 755 (8th Cir. 1996).

Courts have concluded that the Feres doctrine applies even when the connection, between the alleged tortious action, and the military duty, is relatively weak, in order to avoid interfering with the military disciplinary process. In Stubbs v. United States, 744 F.2d 58, 60-61 (8th Cir. 1984), cert. denied, 471 U.S. 1053 (1985), our Court of Appeals applied the Feres doctrine when a female soldier was sexually harassed by her superior officer, and took her own life as a result. The Stubbs Court determined that, although the supervising officer's harassment of the plaintiff soldier served no military purpose, the Feres doctrine should apply, as the tortious conduct took place while the soldier was on duty. Id. at 60-61. The Court reasoned that failing to apply the doctrine would impair military discipline as the Trial would question the interaction between an officer, and his subordinate. Id.; see also, Mackey v. Milam, 154 F.3d 648, 651 (6th Cir. 1998)(supervisors' unfavorable job recommendations for plaintiff soldier was within the scope of Federal employment when they were only solicited because they had been appointed to serve as her commanding officers by the military), cert. denied, 527 U.S. 1035 (1999).

We have considered the implications of a ruling that would allow a military officer to effectively challenge, in a civil Court, an unfavorable personnel decision, made by a duly authorized military Board, and we find that, without an extremely strong showing, that would serve as a dangerous precedent.  "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper the established relationship between enlisted military personnel and their superior officers * * * [which] is at the heart of the necessarily unique structure of the military establishment."  Chappell v. Wallace, 462 U.S. 296, 300 (1983).  Moreover, "civilian courts cannot sit in plenary review over intra-service military disputes * * * the permissible range of lawsuits by present or former servicemen against their superior officers is at the very least, narrowly circumscribed."  Watson v. Arkansas National Guard, supra at 1007, quoting Crawford v. Texas Army National Guard, 794 F.2d 1034, 1035 (5th Cir. 1986)[citations omitted].

We recognize that not every purported defamatory comment, by one military employee against another, would necessarily implicate the Feres doctrine, since the purported defamation could be wholly unrelated to military service.  Here, however, the alleged defamation was assertedly made solely in the context of a military promotion decision, by a member of the Board tasked with deciding who should be

- 30 -

promoted, and in the very proceedings in which he was appointed to participate.   The

interrelationship between the defamation action, and military service, is direct, and

unavoidable, as Heggemeier is plainly being sued for his acts as a military man.   Even

though Meagher does not specifically challenge the military's decision not to promote

him, he merely substitutes a cause of action, against a Federal military officer, to

indirectly accomplish that same purpose.   Accordingly, we find no ground, in this

case, to ignore the clear precedent surrounding the <u>Feres</u> doctrine, so as to interfere

in an intra-military decision that arose in the context of a personnel decision.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Defendant's Motion to Substitute and Dismiss [Docket No. 27]

be granted.

2.      That the Plaintiff's Motion to Remand  [Docket No. 35] be denied.

Dated:  August 7, 2007                      s/Raymond  L.  Erickson

                                            Raymond L. Erickson
                                            CHIEF U.S.  MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties by no later than **August**

**24, 2007**, a writing which specifically identifies those portions of the Report to which

objections are made and the bases of those objections.  Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in

the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a

Hearing, then the party making the objections shall timely order and file a complete

transcript of that Hearing by no later than **August 24, 2007**, unless all interested

- 32 -

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.